No. 2023-2045

# United States Court of Appeals
*for the*
# Federal Circuit

MAQUET CARDIOVASCULAR LLC,
*Plaintiff-Appellant*,

*v.*

ABIOMED INC., ABIOMED R&D, INC., ABIOMED EUROPE GMBH,
*Defendants-Appellees*,

*Appeal from the United States District Court for the District of Massachusetts*

**REPLY BRIEF OF MAQUET CARDIOVASCULAR LLC**


Kirk T. Bradley
Nicholas C. Marais
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000

Christopher L. McArdle
Wade G. Perrin
ALSTON & BIRD LLP
90 Park Ave, 15th Floor
New York, NY 10016
(212) 210-9400

*Counsel for Maquet Cardiovascular LLC*


DECEMBER 22, 2023

## TABLE OF CONTENTS


I. The District Court's Judgment Concerning the '238 Patent Should Be Left Undisturbed. ....3

II. The First Part of the District Court's Construction of "Guide Mechanism Comprising a Lumen" Is Not at Issue. ....3

A. The Parties Do Not Dispute the First Part of the District Court's Construction of "Guide Mechanism Comprising a Lumen." ....5

B. Abiomed Misreads the Parties' Stipulation. ....6

C. The Question of Infringement Is Not Before This Court. ....7

1. The Accused Products Satisfy the First Part of the District Court's Construction of "Guide Mechanism Comprising a Lumen." ....8

2. The Pigtail Guide Mechanism Is Not Part of the Intravascular Blood Pump. ....9

III. The District Court Erred by Saddling the Unadorned Claim Term "Guide Mechanism Comprising a Lumen" With an Additional Requirement That the Lumen "Is Not Distal to the Cannula." ....11

A. For a Prosecution History Regarding a Claim Limitation to Apply to a Child Patent, the Child Patent Must Contain "the Same Claim Limitation"—But Here the Claim Limitations Are Different. ....12

B. Maquet Did Not Disclaim Subject Matter During Prosecution of the Parent. ....17

C. Abiomed's Arguments About Enablement Are Misguided and, in Any Event, Irrelevant to the District Court's Incorrect Claim Construction. ....22

IV. The District Court Erred by Importing a Narrowing Limitation Into the "Guide Wire" Terms Based on Alleged Disclaimer. ....23

A. The Alleged Disclaimer Is Far Too Attenuated to Amount to a Clear and Unmistakable Disavowal of Claim Scope. ....24

B. Abiomed Seeks to Justify the Narrow Construction of the "Guide Wire" Terms by Importing Limitations From the Specification. ............28

C. Abiomed Tries to Justify the District Court's Importation of a Narrowing Limitation by Pointing to the Parties' Agreed Construction of a Different Claim Term. ............29

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............30

Certificate of Compliance with Type–Volume Limitation............32

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Cardiovascular Sys. v. Metronic Vascular, Inc.*,
182 F. App'x 994 (Fed. Cir. 2006) ....................1, 13, 14, 16

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
181 F.3d 1291 (Fed. Cir. 1999) ....................16

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005) ....................3

*Electro Sci. Indus. v. Dynamic Details, Inc.*,
307 F.3d 1343 (Fed. Cir. 2002) ....................7

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
192 F.3d 973 (Fed. Cir. 1999) ....................13, 16

*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014) ....................28

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
620 F.3d 1287 (Fed. Cir. 2010) ....................22

*Jonsson v. Stanley Works*,
903 F.2d 812 (Fed. Cir. 1990) ....................15

*Laitram Corp. v. Morehouse Indus.*,
143 F.3d 1456 (Fed. Cir. 1998) ....................17

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ....................28, 29

*Microsoft Corp. v. Multi-Tech Sys.*,
357 F.3d 1340 (Fed. Cir. 2004) ....................16

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ....................16, 21, 24

*Regents of the Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ....................17

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005) ....................................................................27, 28

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) ..........................................................................23

*Unwired Planet, LLC v. Apple Inc.*,
829 F.3d 1353 (Fed. Cir. 2016) ....................................................................23, 24

*Wang Laboratories, Inc. v. American Online, Inc.*,
197 F.3d 1377 (Fed. Cir. 1999) ..............................................................13, 14, 15

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| ’783 patent | U.S. Patent No. 10,238,783 |
| ’238 patent | U.S. Patent No. 9,789,238 |
| ’728 patent | U.S. Patent No. 8,888,728 |
| USPTO | United States Patent and Trademark Office |
| Völker | U.S. Patent No. 6,248,091 |
| POPR | Patent Owner Preliminary Response |

## ARGUMENT

Abiomed's brief seeks to conflate various concepts and confuse or overcomplicate the issues presented on appeal. But in the end, the core flaws in the district court's claim construction ruling are straightforward, and they warrant reversal.

First, for the claim term "guide mechanism comprising a lumen," the district court impermissibly applied an alleged disclaimer from a related prosecution history, despite that it concerned a ***different*** claim term—"the entire elongate lumen distal to the intravascular blood pump." For a disclaimer to apply to a term in a subsequent patent, it must "contain the ***same*** claim limitation." *Advanced Cardiovascular Sys. v. Metronic Vascular, Inc.*, 182 F. App'x 994, 998 (Fed. Cir. 2006) (emphasis added). In any event, the claim amendment at issue in the parent prosecution did not change the scope of the claim and did not create a disclaimer.

Second, in construing the "guide wire" terms, the district court committed a similar error. The court found a "disclaimer" because, during the prosecution of a separate patent, Maquet purportedly "adopted" the Examiner's summary of the Völker reference, which the Examiner concluded "lacks several features of the invention" and "fails to teach or suggest" the invention. Appx536. The Examiner issued a Notice of Allowance over Völker without Maquet ever distinguishing or even commenting on the reference—the only mention was by the Examiner, and

only in the context of summarizing why Völker was ***not*** pertinent to the claims in that separate patent. But the district court ruled, and Abiomed now contends, that Maquet "adopted" a position that the guide wire (not the guide wire ***lumen***, but the guide wire itself) may never pass in the free space between the rotor blades. Maquet never said that. Maquet never disclaimed that arrangement. In fact, the district court acknowledged "[i]t is true that the specification of the '783 patent explicitly contemplates that the guidewire may be removed prior to operation of the pump." Appx24; *see also* Red Br. 56 (admitting the guide wire "may" be removed). This fact confirms that there is no issue placing the guide wire in the free space in between the rotor blades, as the guide wire "may be removed prior to operation of the pump." Appx24.

Throughout its brief, for both disputed claim terms, Abiomed tries to limit the '783 patent to preferred embodiments, even asserting that the "specification ***defines*** the 'broad aspects of the present invention' to permit ***only three*** guide-wire configurations." Red Br. 55 (emphasis added). The patent is not so narrow. For example, Abiomed ignores the description of the invention's "rapid exchange" guide mechanism, which includes a guide wire lumen in a guide carriage that is simply "formed along at least a portion of the cannula"—just as in Abiomed's Impella devices. Appx136 at 14:15–21.

These points and more are addressed below. Before replying to Abiomed's substantive arguments on the two claim construction issues (*see* Sections III and IV, *infra*), Maquet first dispels two matters raised by Abiomed that are not properly before this Court and need not be considered (*see* Sections I and II, *infra*).

## I. The District Court's Judgment Concerning the '238 Patent Should Be Left Undisturbed.

Abiomed asks this Court to affirm the district court's noninfringement judgment for the '238 patent. Red Br. 67–69. But the '238 patent is not at issue in this appeal. Maquet "dropped its allegations as to the '238 patent" years ago. Blue Br. 4. Abiomed itself acknowledges that "Maquet has not appealed the judgment as to that patent." Red Br. 69. Because it is not at issue here, this Court should "leave that portion of the judgment undisturbed." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1303 (Fed. Cir. 2005).

## II. The First Part of the District Court's Construction of "Guide Mechanism Comprising a Lumen" Is Not at Issue.

Abiomed asks this Court to find noninfringement because Maquet has not challenged the ***first part*** of the district court's construction of "guide mechanism comprising a lumen"—the part stating that the guide wire lumen "does not extend through the free space between the rotor blades." Maquet instead challenges the ***second part*** of the court's construction—the part stating that the guide wire lumen

"is not distal to the cannula." *See, e.g.*, Blue Br. 28. Abiomed contends that Maquet needed to challenge both parts, but that is wrong.

As Maquet explained in the Blue Brief, the first part "makes no practical difference" (and does not affect infringement) "because the guidewire lumen would never be placed in the free space between the rotor blades." Blue Br. 12 n.4.

> The lumen (unlike the guide wire) is integral to the device and thus remains in place during operation of the blood pump. If the lumen were placed in the free space between the rotor blades, the blades would not be able to turn (thus preventing the blood pump from working).

*Id*. To be sure, Abiomed's accused Impella devices do not have a lumen in the free space between the rotor blades. As Abiomed depicts on page 22 of the Red Brief, the guide wire lumen is "defined by [the] pigtail body," which is not in (or anywhere near) the free space between the rotor blades. Here is another depiction (with the guide wire lumen in the pigtail):




Appx1154 (annotated).

Thus, Maquet's appeal does not challenge the first part of the construction, as Maquet has no quibble there. Maquet instead challenges the second part—the requirement that the lumen "is not distal to the cannula." Appx23. But Abiomed

improperly treats the stipulation as if Maquet admitted noninfringement of ***both*** independent requirements of the construction, and Abiomed then tries to win this appeal before it has begun by proclaiming that Maquet stipulated to noninfringement under the first part and did not appeal it. *See* Red Br. 23–27. Abiomed is flat wrong.

### A. The Parties Do Not Dispute the First Part of the District Court's Construction of "Guide Mechanism Comprising a Lumen."

In the parties' "first litigation" (*see* Blue Br. 3–4), Maquet accused Abiomed's Impella products of infringing certain patents in the '783 patent family. The parties disputed the meaning of six terms related to the guide wire lumen. Appx208. Abiomed proposed that ***both*** the guide wire lumen ***and*** the guide wire itself could not extend through the free space between the rotor blades. *Id.* In a 2018 ruling, the district court agreed with Abiomed about the guide wire lumen but disagreed about the guide wire itself. Appx213.

Maquet chalked that up as a win. The first part did not matter because, as described above, Abiomed's guide wire lumen does not extend through the free space between the rotor blades. Abiomed never argued otherwise. Nowhere during the next five-plus years of litigation did Abiomed ever argue that the "entire path of the guide wire through the pump system is a guide-mechanism lumen," as Abiomed

now argues on appeal.[1] Red Br. 26. Abiomed never suggested or even hinted that its Impella devices did not infringe because of a guide wire lumen in the free space between the rotor blades.

### B. Abiomed Misreads the Parties' Stipulation.

Abiomed asks this Court to find infringement on the ground that Maquet needed to, but failed to even try to, overturn the first part of the district court's construction of "guide mechanism comprising a lumen." But Abiomed's theory misreads the parties' stipulation.

Quoting the stipulation, Abiomed recounts the two parts of the district court's construction for "guide mechanism comprising a lumen." Red Br. 23. Then, following a strategically placed ellipsis, Abiomed resumes the quote with the stipulation's reference to "these terms." *Id*. Abiomed's approach implies that "these terms"—which served as the basis for the stipulation—were ***the two parts*** of the construction of the first term. In truth, "these terms" referred to the construction of

---

[1] Abiomed's appellate argument is contrary to its position in the district court, where Abiomed stated that the lumen terms "require a lumen ***designed for*** a guide wire" and that the "claims exclude designs that pass the . . . ***dedicated guide wire lumen*** . . . through the free space between the rotor blades." Appx1299, Appx1302 (emphasis added). The pigtail is formed along a portion of the cannula, specifically where it is glued and screwed to the sidewall of the distal portion of the cannula's inlet cage.

the first term ("guide mechanism comprising a lumen") together with the construction of the "guide wire" terms. The stipulation shows as much:

> 2. On September 12, 2022, this Court entered a Memorandum and Order on Claim Construction (Dkt. No. 248), construing various claim terms. As relevant to this Stipulation, ***the Court construed the term "guide mechanism comprising a lumen"*** ('783 Patent, cl. 1) to require that the "guidewire lumen (1) does not extend through the free space between the rotor blades and (2) is not distal to the cannula." ***The Court also construed the terms*** "guide mechanism is configured to allow a guidewire to slideably advance" / "guide wire does not pass through the rotor hub of the catheter" ('783 Patent cls. 1, 24; '238 Patent, cls. 1, 13, 19) to require that the "guide wire does not extend through the free space in between the rotor blades."
>
> 3. ***Based on the Court's constructions of these terms,*** Maquet cannot prove infringement of the Claims at Issue by the Accused Products.

Appx4 (emphasis added). Nowhere did Maquet independently concede noninfringement under ***the first part*** of the construction for the first term ("guide mechanism comprising a lumen"). Maquet's concession was based on the district court's errant construction of "these terms"—the very terms disputed in this appeal.

### C. The Question of Infringement Is Not Before This Court.

Because Abiomed spends many pages addressing noninfringement under the first part of the construction of "guide mechanism comprising a lumen," Maquet provides a limited response even though the question is not before this Court. *See, e.g.*, *Electro Sci. Indus. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1350 (Fed. Cir. 2002) (refusing to consider the merits of noninfringement because they involve

"question[s] of fact" and "this appellate court possesses no tools or mandate for fact-finding").[2]

### 1. The Accused Products Satisfy the First Part of the District Court's Construction of "Guide Mechanism Comprising a Lumen."

Abiomed asserts that the Impella devices incorporate a "guidewire lumen" that "extends through the free space between the rotor blades" and thus do not infringe. *See* Red Br. 26–27. Abiomed's argument newly suggests (without citing any record evidence) that ***any free space*** through which the guide wire passes is a "guidewire lumen." *See, e.g.*, Red Br. 28.

Abiomed ignores the full claim term at issue, which is "a guide mechanism comprising a lumen having a proximal and a distal end, the guide mechanism adapted to guide a distal portion of said intravascular blood pump system to a predetermined location within a circulatory system of a patient." Appx146 at 34:5–9. The claimed "lumen" is part of the claimed "guide mechanism" that is "adapted to guide" the blood pump system. *Id.* The guide wire lumen cannot and does not encompass ***all free spaces*** through which a guide wire may pass. As the district court recognized, the term "guidewire lumen" means "the lumen ***component of the guide***

---

[2] Maquet has not "forfeited" opposition to Abiomed's new noninfringement theories. Red Br. 26. ***Abiomed*** has raised noninfringement despite it not being at issue in this appeal.

***mechanism***." Appx20 (emphasis added). With that context, the accused products clearly satisfy the first part of the construction because the lumen (blue pigtail) does not extend through the free space between the rotor blades:




Appx1154 (annotated).

### 2. The Pigtail Guide Mechanism Is Not Part of the Intravascular Blood Pump.

Next, in another new argument never presented below, Abiomed contends that the claimed "guide mechanism" must be part of the "pump." *See* Red Br. 32–34. Abiomed then argues that because the Impella's pigtail (the guide mechanism) is not part of the pump, the Impella does not infringe. But Abiomed misunderstands the "pump" in the context of the specification. The specification never requires that the guide mechanism be part of the pump.

The '783 patent uses the word "pump" interchangeably to refer to (i) the components that pump blood (*e.g.*, the pump with its rotor and rotor blades); and (ii) the overall pump system, which the specification mostly calls the "pump system" but sometimes calls a "pump." For example, the Summary of the Invention references "an improved intravascular blood pump," which in context is a reference

to the blood pump ***system***. Appx130 at 2:63. The Summary immediately proceeds to describe a "first broad aspect," a "second broad aspect," and a "third broad aspect" of the invention, each time describing an "intravascular blood pump ***system***." Appx131 at 3:4-5, 3:19-20, 3:34-35. Also, the specification interchangeably refers to "the intravascular blood pump 10" (Appx136 at 14:8) and an "intra-vascular blood pump ***system*** 10" (Appx134 at 9:13–14 (emphasis added)). Figures 1 and 2 both depict pump system 10 as the overall system:

*FIG. 1*






Appx93–94 at Figs. 1, 2 (annotated).

Abiomed ignores the full specification and instead seizes on two instances of the word "pump" without the accompanying word "system," and from that argues that the guide mechanism lumen must always be part of the pump. Relying on that false requirement, Abiomed says this Court should find noninfringement. Abiomed is wrong. And the district court never even considered these arguments, which Abiomed newly raises on appeal. This Court should not address them, but if it does, they should be rejected.

## III. The District Court Erred by Saddling the Unadorned Claim Term "Guide Mechanism Comprising a Lumen" With an Additional Requirement That the Lumen "Is Not Distal to the Cannula."

As Maquet explained in the Blue Brief, the district court erred in its construction of the term "guide mechanism comprising a lumen" in the '783 patent. This claim phrase—indeed, the claims as a whole—never restrict the position of the

guide mechanism's lumen. Instead, the guide mechanism must merely "compris[e] a lumen." To be sure, the intrinsic record of the '783 patent does not require limiting the lumen to only those "not distal to the cannula." The district court did not rule or even suggest otherwise.

The district court added the requirement (that the lumen "is not distal to the cannula") based solely on the prosecution of the parent '238 patent. The court ruled that Maquet had disclaimed claim scope during that prosecution and that the disclaimer was "legally binding" such that it trickles downstream to the child '783 patent. Appx22. Abiomed now defends that approach. But as explained below, Abiomed and the district court are incorrect because there was no disclaimer. But even more importantly—before even addressing any alleged disclaimer—this Court should first determine whether the district court permissibly relied on the prosecution history of the parent. It did not.

### A. For a Prosecution History Regarding a Claim Limitation to Apply to a Child Patent, the Child Patent Must Contain "the Same Claim Limitation"—But Here the Claim Limitations Are Different.

The claim limitation construed by the district court is "guide mechanism comprising a lumen." The claim limitation at issue in the parent prosecution was "the entire elongate lumen distal to the intravascular blood pump." These are not the same claim limitation. They are not synonyms. They are not immaterially different. They do not have the same scope.

This Court has consistently explained that, for a court to rely on a related prosecution history for claim construction, the related prosecution history and the subsequent patent must "contain the same claim limitation." *Advanced Cardiovascular*, 182 F. App'x at 998 ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation." (quoting *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999))). The Blue Brief identified several cases so holding. *See* Blue Br. 29–32. Abiomed contends that the Blue Brief "misstates the law." Red Br. 48. Abiomed is wrong.

In support of its argument, Abiomed cites just two cases—*Advanced Cardiovascular* (quoted *supra*) and *Wang Laboratories, Inc. v. American Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999). In *Advanced Cardiovascular*, the earlier prosecution history (involving Medtronic's '331 patent) discussed the claim term "ends" (sometimes called "peaks") in the context of a stent. 182 F. App'x at 997. During that prosecution, the applicant said the "ends" or "peaks" of the stent were at "the very top and the very bottom," thus constituting "a clear and unmistakable disavowal of additional elements on its stent 'ends' or 'peaks.'" *Id*. Medtronic's later '053 patent employed synonyms of these same words, making the claim limitation "the same" for applying the prior disclaimer. As this Court stated:

> With respect to the ’053 patent, Medtronic correctly states that its claims do not all use the term “end” . . . . Instead, certain claims use “turn” or “curved member.” However, because the specification for the ’331 patent uses “peaks” and “turns” ***synonymously***, and “turn” and “curved member” are used in the ’053 patent claims ***synonymously*** with “end,” we find that those claims embody ***the same “peak” or “end” limitation*** as the ’331 patent, i.e., the disclaimer from the ’331 patent applies against the ’053 patent.

*Id*. at 998 (citation omitted) (emphasis added). Accordingly, *Advanced Cardiovascular* supports Maquet’s position, not Abiomed’s.

Abiomed’s reliance on *Wang Laboratories* fares no better. This Court limited the claim term “frame” in Wang’s ’669 patent to “the character-based systems described in the ’669 patent.” *Wang Labs.*, 197 F.3d at 1381–83. The patent contained no other embodiments: “The ***only embodiment*** described in the ’669 patent specification is the character-based protocol, and the claims were correctly interpreted as limited thereto.” *Id*. at 1383 (emphasis added). This Court supported its ruling by referencing the parent’s prosecution history. During that prosecution, Wang had distinguished prior art by stating that it encoded information on a picture element level “rather than on the character level.” *Id*. at 1384. This Court stated that “[t]his history reinforces the conclusions that the inventors focused their invention, and the description and claims directed to that invention, on a character-based system.” *Id*.

*Wang Laboratories* does not mention any disclaimer, and this Court did not discuss or compare the claim language in the parent prosecution to the claim

language in the later patent. This Court did, however, cite *Jonsson v. Stanley Works*, 903 F.2d 812 (Fed. Cir. 1990), where the related prosecution history and the later patent both used ***the same claim term***, "diffuse light." *See id*. at 818 ("Hence, the prosecution history of the '251 patent and the construction of the term 'diffuse light' contained in that patent, is relevant to an understanding of 'diffuse light' as that term is used in the '912 patent.").

Unlike the term "frame" in *Wang Laboratories*—which was narrowed consistent with "the only embodiment described in the [] patent specification," 197 F.3d at 1383—here the '783 patent specification describes the term "lumen" broadly, without restriction. *See, e.g.*, Appx131 at 3:10–14 (Summary of the Invention: "a central lumen is formed through at least a portion of the intravascular blood pump system such that a guide element, such as a guide wire, may be progressed therethrough and advanced to the predetermined location in the circulatory system of the patient."); *id.* at 3:25–27 ("a side lumen is formed along a length of at least one of the intravascular blood pump and the cannula"); *id.* at 3:65–67 (referencing "a guide wire for passage through a lumen extending through the drive cable and rotor"); *id.* at 14:15–21 (the "rapid exchange" "guide mechanism 122 includes a guide carriage 124 formed along at least a portion of the cannula 14, and a suitable guide element (such as guide wire 22) dimensioned to pass slidably through a lumen (not shown) extending through the guide carriage

124”). There is no statement, no suggestion, no hint anywhere in the specification that the lumen cannot be distal to the cannula. The claims reflect the same approach.

Thus, even Abiomed’s cases support Maquet’s summary of this Court’s law. Abiomed nonetheless argues that disclaimer applies even where there is “common ***subject matter*** across patents,” Red Br. 48 (emphasis in original). That is not correct. This Court’s law is clear—the ***claim limitations themselves*** must be the “same” or “common.” There is no shortage of cases making the point. Here are several:

- “When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain ***the same claim limitation***.” *Advanced Cardiovascular*, 182 F. App’x at 998 (quoting *Elkay Mfg.*, 192 F.3d at 980) (emphasis added).

- “Although a parent patent’s prosecution history may inform the claim construction of its descendent, the [parent] patent’s prosecution history is ***irrelevant*** to the meaning of this limitation ***because the two patents do not share the same claim language***.” *ResQNet.com*, 346 F.3d at 1383 (emphasis added).

- “***As long as the same claim limitation is at issue***, prosecution disclaimer made on the same limitation in an ancestor application will attach.” *Omega Eng’g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003).

- “[T]he prosecution of a parent application may limit the scope of a later application using ***the same claim term***.” *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1300 (Fed. Cir. 1999) (emphasis added).

- “[W]e have held that the prosecution history of one patent is relevant to an understanding of the scope of ***a common term*** in a second patent stemming from the same parent application.” *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (emphasis added).

- "[W]hen two patents using ***the same claim term*** both stem from the same parent patent application, the prosecution histories of both are relevant to an understanding of the term in both patents." *Laitram Corp. v. Morehouse Indus.*, 143 F.3d 1456, 1460 n.2 (Fed. Cir. 1998) (emphasis added).

- "Our ***requirement that the patents share 'limitations in common'*** is not a mere technicality: it is necessary to support the inference that the patentee's earlier arguments are also applicable to the claim limitations of the patent-in-suit." *Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 944 (Fed. Cir. 2013) (emphasis added).

Because the term here at issue is different from that involved in the parent prosecution history, that history is "irrelevant" to the meaning of "guide mechanism comprising a lumen." *ResQNet.com*, 346 F.3d at 1383. This Court can and should reverse on that basis.

### B. Maquet Did Not Disclaim Subject Matter During Prosecution of the Parent.

As discussed in the previous section, the prosecution history for the parent '238 patent did not involve the claim term "guide mechanism comprising a lumen" at issue in this appeal. Instead, it involved a different term—"the entire elongate lumen distal to the intravascular blood pump." Because they "do not share the same claim language," that earlier prosecution history is "irrelevant." *ResQNet.com*, 346 F.3d at 1383. Still, even if the parent prosecution were relevant, the district court's construction would still be wrong because Maquet never disclaimed any claim scope in the earlier prosecution.

Abiomed's entire "disclaimer" argument hinges on the incorrect notion that the cannula is part of the claimed pump. That is the only way to make Abiomed's (and the district court's) errant leap from the claim language in the parent application, which said that the lumen ***is*** distal to ***the pump***, to the purported disclaimer under which the lumen ***is not*** distal to ***the cannula***. Appx23 (emphasis added).

But the cannula is ***not*** part of the claimed pump. They are separate components. The specification (common to the parent '238 patent and the '783 patent at issue here) makes this abundantly clear—in the written description, in the figures, and in the claims. In the Summary of the Invention section alone, there are at least eighteen recitations of the pump as a separate component from the cannula. *See, e.g.*, Appx131 at 3:5–6, 3:20–21, 3:35–36, and 3:64–65 ("an intravascular blood pump having ***a cannula coupled thereto***"); *id*. at 3:7–8, 3:23–24, and 3:37–38 (a guide mechanism for "selectively positioning the intravascular blood pump ***and*** cannula"); *id*. at 3:16–18 and 3:30–32 ("the intravascular blood pump ***and*** cannula may thereafter be advanced"); *id*. at 3:25–27, 4:38–39, 4:43–44, and 4:44–45 ("***at least one of*** the intravascular blood pump ***and*** cannula" (sometimes written as " . . . ***and the*** cannula")); *id*. at 3:65–66 ("guide the intravascular blood pump ***and*** cannula"); *id*. at 4:5–6 ("the cannula is ***coupled to*** the shroud of the intravascular blood pump"); *id*. at 4:59–60 ("the intravascular blood pump ***and***

cannula may be selectively advanced"); *id.* at 4:63–64 and 5:5–6 ("sliding the intravascular blood pump ***and*** cannula along the guide wire") (emphasis added in each).

Like the written description, the figures (including Figures 1, 2, 3, 6, 10, 13, 14, and 19) consistently show that "pump 12" is a different component than "cannula 14." Figure 6 is representative:

*FIG. 6*




Appx98. The written description for Figure 6 reinforces the point, stating that the figure depicts the pump system with "the blood pump 12 ***and*** cannula 14 arrangement." Appx136 at 14:11–14 (emphasis added).

The claims make the same point. The claims at issue here are claims 1, 2, 3, and 24. Independent claim 1 (and thus dependent claims 2 and 3) recite the pump as a separate component from the cannula. *See* Appx146 at claim 1 (reciting a "pump system" comprising three components: "an intravascular blood pump," "a cannula," and "a guide mechanism comprising a lumen").[3] Claim 24 recites "a cannula that is coupled to a distal end of the intravascular blood pump." Appx148 at claim 24. A cannula "coupled to" the pump makes clear that the cannula is not itself part of the pump.

Abiomed complains that Maquet did not point this out during the parent prosecution history: "Maquet could have argued [to the Examiner] that the pump and cannula were separate components, but did not." Red Br. 36. Maquet had no reason to make such an argument, as the patent plainly shows they are two separate

[3] Abiomed tries to tuck the cannula inside the pump (despite that the written description and figures never suggest such a curiosity) by breaking down the "format" of claim 1 of the '783 patent. *See* Red Br. 42–46. Abiomed's breakdown is wrong. Claim 1 is directed to an "intravascular blood pump system" having three components (with two "wherein" clauses at the end). The three components are each separated by a semi-colon. The claim recites a "pump system" comprising: (1) "an intravascular blood pump comprising: a rotor . . . and . . . a shroud within which the rotor is rotatably disposed;" (2) "a cannula . . . ;" and (3) a guide mechanism comprising a lumen . . . ;" (4) "wherein . . . , and wherein . . . ." Appx146 (claim 1). Abiomed's view ignores the semi-colons and specifically ignores that the pump comprises a rotor "and" a shroud (which is then followed by a semi-colon that separates the pump from the next part of the system, the cannula). *Id*. And, of course, Abiomed's view ignores the truth spelled out repeatedly in the written description and the figures—that the pump is a different component than the cannula.

components. *See, e.g.*, Appx422 (pending claim 14 reciting "a cannula coupled to a distal end of the intravascular blood pump"). In any event, Maquet did push back on the Examiner's errant statement (in issuing an enablement rejection) that "the pump also comprises the cannula." Appx493. Maquet "traverse[d] the rejection of record as being inappropriate," but "purely in order to expedite prosecution," implemented the Examiner's suggestion. Appx517. The Examiner suggested revising the "lumen is distal to the pump" language to say that the "lumen is distal to the pump's rotor," which was not substantively different (Abiomed does not argue otherwise). Thus, there was no need for Maquet to point out that the cannula is not part of the pump. It was not (and is not), and the Examiner's errant comment did not change that fact.

In the end, the pertinent sequence of events—revising claim language reciting *the lumen is distal to the pump* to language reciting *the lumen is distal to the pump's rotor*—does not constitute a "clear and unmistakable disclaimer" such that a lumen cannot now be distal to the cannula. *Omega Eng'g*, 334 F.3d at 1323. As described in the Blue Brief (at 33–36), there was no disclaimer at all. Nothing was relinquished. Nothing was disavowed. Maquet never "agreed" that the lumen cannot be distal to the cannula. Red Br. 36–37. So there was no basis for the district court's ruling restricting the phrase "guide mechanism comprising a lumen" to only those lumens "not distal to the cannula." Appx23.

### C. Abiomed's Arguments About Enablement Are Misguided and, in Any Event, Irrelevant to the District Court's Incorrect Claim Construction.

The district court never addressed any substantive question of enablement, nor did Abiomed ask the court to do so. But Abiomed argues in this appeal that a lumen distal to the cannula "is not enabled and is not within the scope of the invention." Red Br. 38 (capitalization removed). There is no ruling for this Court to consider, and this Court does not sit to address such a matter in the first instance. *See, e.g.*, *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010) (this Court "will not undertake . . . enablement inquiries in the first instance").

In any event, the specification does enable the full scope of the claims containing the disputed term ("guide mechanism comprising a lumen"), which are claims 1, 2, and 3. None of these claims restrict the lumen's placement or orientation. Instead, they recite (via independent claim 1) simply that the guide mechanism "compris[es] a lumen," and that the lumen has "a proximal end and a distal end." Appx146, claim 1. That feature is fully enabled by the specification. For example, the Summary of the Invention describes a "lumen" that "is formed through at least a portion of the intravascular blood pump system such that a guide element, such as a guide wire, may be progressed therethrough." Appx131 at 3:10–13. It also describes

a "lumen" that is "formed along a length of at least one of the intravascular blood pump and the cannula." *Id*. at 3:26–27.

## IV. The District Court Erred by Importing a Narrowing Limitation Into the "Guide Wire" Terms Based on Alleged Disclaimer.

The district court narrowed the "guide wire" terms by applying disclaimer based on a statement ***made by the Examiner***—not by Maquet—during prosecution of a different patent. The court limited the terms "to include the limitation that 'the guide wire does not extend through the free space in between the rotor blades.'"[4] Appx25. The court ruled that Maquet had "adopted the examiner's position" about the Völker reference. *Id*. But in so ruling, the district court never pointed to a statement or action by Maquet showing any adoption. Abiomed does not either. And understandably so since there is none.

Abiomed's brief thus takes a different approach—obfuscation of an otherwise straightforward question: Did Maquet make a "clear and unmistakable" disclaimer or disavowal of claim scope, which "requir[es] 'words or expressions of manifest exclusion or restriction' in the intrinsic record"? *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). The answer is no.

---

[4] The district court's added limitation is directed to the free space between the ***rotor blades***, which is distinct from claim 24's actual requirement of not allowing the guide wire to pass through the ***rotor hub*** (or the catheter).

### A. The Alleged Disclaimer Is Far Too Attenuated to Amount to a Clear and Unmistakable Disavowal of Claim Scope.

This Court has explained that a disclaimer must be clear and unmistakable in order "[t]o balance the importance of public notice and the right of patentees to seek broad patent coverage." *Omega Eng'g*, 334 F.3d at 1325. This Court has therefore "consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope." *Id.*

Abiomed's effort to show a clear and unmistakable disclaimer is a winding journey. The district court relied on no part of that journey in ruling that Maquet had "disclaimed [] subject matter during the prosecution." Appx25. Instead, the court said simply that the Examiner distinguished Völker and Maquet somehow "adopted that position." Abiomed's approach, by comparison, walks through various parts of the prosecution history to locate a disclaimer. Abiomed studies the "earlier interactions between [Maquet] and the Examiner" that purportedly "shaped the Examiner's understanding of the scope of Maquet's claims," which ultimately led "to his statements in the NOA [i.e., the second Notice of Allowance] about Völker, where [the Examiner] adopts Maquet's arguments" regarding other matters (since Völker was not even of record until ***after*** the initial Notice of Allowance). Red Br. 57–58. But the critical question remains unanswered—where is the "clear and unmistakable" disclaimer via "words or expressions of manifest exclusion or restriction"? *Unwired Planet*, 829 F.3d at 1358.

A deeper dive into Abiomed's journey shows the lack of any disclaimer. Abiomed's first stop is at the prosecution history of the '728 patent, which is not at issue here. Abiomed relies on the Examiner's summary of an interview (not Maquet's own statements) regarding claim 15 of the '728 patent (a different claim in a different patent than here). The Examiner addressed the Bedingham and Gordon references—not Völker, which was not known yet—and summarized Maquet's argument against combining them: "Gordon is a cathether, not a blood pump, and therefore does not require an open lumen for a rotor," and thus the "combination would destroy the teachings of Bedingham." Appx1097. The Examiner's summary contains no disclaimer by Maquet.

Abiomed's second stop is where Maquet distinguished claim 15 (again, a different claim than at issue here) from Bedingham—not Völker—by explaining that Bedingham did not teach a "guide wire mechanism configured as a lumen." Appx1109. Maquet asserted that Bedingham did not teach "use of a lumen." *Id.* Maquet continued by asserting that there was no motivation to combine Bedingham with Gordon. Appx1110. Maquet added that even if "one were to look to Gordon, the Examiner has not provided any guidance as to how one would implement the proposed modifications to the device of Bedingham" at least because "additional modifications would be necessary to teach one of ordinary skill in the art how to arrange the catheter lumen 46 of Gordon so that it would enable a guide wire to pass

along, in, through, about, or otherwise with the blood pump of Bedingham." Appx1110–1111. Finally, Maquet noted that the combination would render Bedingham inoperable based on the teachings of Gordon's "lumen 46." Appx1111.

Here again, there was no disclaimer justifying the narrow limitation added by the district court based on Völker requiring that "the ***guide wire*** does not extend through the free space in between the rotor blades." Appx25 (emphasis added). At most the discussion related to the separate, agreed construction that "the ***lumen*** does not extend through the free space between rotor blades." Appx20–21.

Abiomed's third stop is the Examiner's reasons for allowance of claim 15 over, in part, Bedingham and Gordon (but not Völker). The Examiner explained that "[m]odifying Bedingham and Nix with Gordon would not provide an operable device since Bedingham requires free space for impeller 56 to rotate" and "[i]mpeller 56 would be impinged upon by guidewire ***lumen 46*** of Gordon when modified in the proposed manner." Appx174 (emphasis added). The Examiner added that "[a]dding guidewire ***lumen 46*** of Gordon along any point on inner sleeve 38 of Bedingham would interfere with the rotation of impeller 56." Appx175 (emphasis added). Here again, these statements concern the separate, agreed view that the ***lumen*** does not extend through the free space between the rotor blades, not that the ***guide wire*** cannot do so.

Abiomed's fourth stop finally addresses Völker. In a second Notice of Allowance, the Examiner made unilateral statements about Völker. *See* Appx536. Maquet never responded or commented, and there was no need to do so because the Examiner's comments described a host of reasons why Völker was distinguishable from the claims at issue. *See id*. As this Court has explained, "an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005). That maxim applies here.

Abiomed's fifth and final stop is at IPR proceedings involving a different patent (the '728 patent) and different prior art grounds (not Völker). Maquet noted in its preliminary response that one of Abiomed's cited prior art references (Aboul-Hosn) had "similar teachings" to Völker, and the Examiner had "explicitly considered and found the claims patentable over . . . V[ö]lker," which supported denying the petition. Appx551. Maquet never disclaimed any subject matter—and certainly not for the '783 patent at issue here, which was not involved in any IPR.

Abiomed's winding approach comes nowhere near demonstrating a clear and unmistakable disclaimer such that the guide wire can never extend through the free space between the rotor blades. Even the district court did not take Abiomed's path. The district court merely said that "Maquet adopted [the Examiner's] position,"

never once saying where or how. Appx24. Maquet never adopted such a position, and silence is not enough. *Salazar*, 414 F.3d at 1345.

### B. Abiomed Seeks to Justify the Narrow Construction of the "Guide Wire" Terms by Importing Limitations From the Specification.

The district court's ruling stemmed solely from the prosecution history for the '728 patent, but Abiomed also seeks to defend the ruling based on the specification. The specification does not support the imported negative limitation. A patent specification will narrow claim scope in only two situations: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). Neither applies here.

Abiomed first points to the absence of an answer in the specification. Abiomed says "the specification does not disclose or support claims to a guide wire passing through the rotor blades." *See* Red Br. at 55 (capitalization omitted). Even if true, that is no basis for finding disclaimer. *See, e.g.*, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 907–08 (Fed. Cir. 2004) (declining to limit the invention's scope to the disclosed embodiments when the specification did "not expressly or by clear implication reject the scope of the invention" to those embodiments).

Next, Abiomed admits that "the specification teaches that the guide wire 'may'—but does not have to be—removed after the pump is placed." Red Br. at 56. The district court likewise acknowledged that "[i]t is true that the specification of the '783 patent explicitly contemplates that the guidewire may be removed prior to operation of the pump." Appx24; *see also* Appx25 ("the specification indicates that removal of the guidewire is optional"). These concessions confirm the absence of any disclaimer. The guide wire can be placed and removed. Thus, when the guide wire extends through the free space between the rotor blades, it "may" be removed, thus permitting the pump blades to freely turn (after the guide wire's removal). The district court explained that "nothing in the specification teaches the insertion of a guidewire between the rotor blades," Appx25, but nothing precludes it either. A disclaimer—either "expressly or by clear implication"—is required. *Liebel-Flarsheim*, 358 F.3d at 908. Here there is none.

### C. Abiomed Tries to Justify the District Court's Importation of a Narrowing Limitation by Pointing to the Parties' Agreed Construction of a Different Claim Term.

In a final effort to justify the district court's improper narrowing of the "guide wire" terms, Abiomed asserts that the parties' separate agreed construction supports the ruling. Abiomed contends that because the parties agreed that the term "guide mechanism comprising a lumen" (in claim 1 of the '783 patent) is limited such that the "***lumen*** does not extend through the free space between rotor blades," that

agreement should likewise preclude the ***guide wire*** from passing through the free space between the rotor blades.[5]

But the guide wire lumen and the guide wire are two different things, and the parties' agreement about the lumen says nothing about the guide wire. As the district court ruled, the term "guidewire lumen" means "the lumen ***component of the guide mechanism***." Appx20 (emphasis added). The guide mechanism is integrated into the device. If the guide mechanism and its guide wire lumen were placed in the free space between the rotor blades, the blades would not turn and the blood pump would not work. The same is not true for the guide wire itself because, as noted in the previous section (and acknowledged by both Abiomed and the district court), the guide wire can be removed before operation of the pump. The lumen, by comparison, stays in place.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons shown, this Court should reverse the district court's claim constructions, vacate the stipulated judgment of noninfringement, and remand.

Dated: December 22, 2023

*/s/ Kirk T. Bradley*
Kirk T. Bradley

---

[5] At best Abiomed's argument applies only to claim 1, not claim 24 (which lacks the term "guide mechanism comprising a lumen").

ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000

*Counsel for Maquet Cardiovascular LLC*

FORM 19. Certificate of Compliance with Type-Volume Limitations — Form 19, July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2045

**Short Case Caption:** Maquet Cardiovascular LLC v. Abiomed, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6981 words.

☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.

☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 12/22/2023

Signature: /s/ Kirk T. Bradley

Name: Kirk T. Bradley